UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RUFUS J. ERVIN, SR.,           )
                               )
            Petitioner,        )
                               )
      vs.                      )    Case No. 4:04-CV-1296 (CEJ)
                               )
JIM PURKETT,                   )
                               )
            Respondent.        )

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner's objections to
the Report and Recommendation of United States Magistrate Judge
Lewis M. Blanton, to whom the matter was referred pursuant to 28
U.S.C. § 636(b).  On August 15, 2007, Judge Blanton issued a Report
and Recommendation, recommending that the petition of Rufus J.
Ervin, Sr., for habeas corpus relief be denied.  Petitioner has
filed objections to the Magistrate Judge's Report and
Recommendation.  Pursuant to 28 U.S.C. § 636(b)(1), the Court makes
the following *de novo* determination of the portions of the report
and the specified findings or recommendations to which objection is
made.

**I.   Background**

On March 21, 1997, a jury convicted petitioner of murder in
the first degree for the murder of Leland White.  Evidence at trial
revealed that petitioner visited Mr. White's property, greeted Mr.
White, and entered Mr. White's trailer.  Petitioner's companions
for the night, including state witness Lucius House, remained
outside in the car.  Mr. White was heard yelling for help from

within the trailer.  Soon thereafter, a kerosene lamp was knocked over and the trailer immediately caught fire.  Petitioner dragged Mr. White out of the trailer by pulling on something tied around Mr. White's neck.  Mr. White was naked.  After petitioner dragged Mr. White across the driveway, he propped him up next to a tree.  Mr. White then told petitioner, "Just go ahead and kill me, James.  Just kill me, James."[1]  Petitioner picked up a brick and hit Mr. White multiple times on the head.  Petitioner then attempted to get into the vehicle and leave, but the car had gotten stuck on a boulder.  While the vehicle was stuck, petitioner along with one of his companions threw Mr. White forward about three feet into the fire.  About one hour later, petitioner was finally able to free the car from the boulder, but the car was not operable.  Petitioner decided to call the police to report that the house had blown up.  The police and coroner arrived and determined that Mr. White's cause of death was an open skull fracture.  Mr. White's throat had also been slashed.  The fire investigator labeled the cause of the fire "undetermined", but admitted at trial that the kerosene lamp could have caused the damage.  After speaking with individuals on the scene, police placed petitioner and a couple of his companions under arrest.

Although the jury unanimously found petitioner guilty of first degree murder, it was unable to make a verdict on punishment in the penalty phase of petitioner's trial.  The court subsequently

---

[1]Petitioner was referred to as "James" throughout the trial.

imposed a sentence of death.  On November 3, 1998, the Missouri Supreme Court affirmed petitioner's conviction.  Petitioner then filed a pro se motion for state post-conviction relief.  Counsel was appointed to represent petitioner, and an evidentiary hearing was held.  The motion court denied petitioner's motion for post-conviction relief.  The Missouri Supreme Court partially affirmed the judgment, but remanded the case to the motion court in order to consider the constitutionality of petitioner's death sentence.  On remand, the motion court held that the death sentence violated the Sixth and Fourteenth Amendments because it was imposed by the court absent any finding by the jury beyond a reasonable doubt that an aggravating circumstance existed.  Petitioner was later re-sentenced to life without the possibility of parole.  Petitioner filed this federal habeas action on February 9, 2005.

Petitioner asserts the following claims for habeas corpus relief: (1) the trial court erred in sustaining the prosecution's challenge for cause during voir dire; (2) the trial court erred in admitting references to statements made by co-defendant Henry Cook; (3) the evidence was insufficient to support the deliberation element of first degree murder; (4) the trial court should have suppressed petitioner's statements to law enforcement; (5) the trial court should not have admitted photographs of the gruesome crime scene and the autopsy; (6) the prosecutor made statements that were improper and prejudicial to the petitioner; (7) certain guilt and penalty phase evidence was improperly admitted; (8) the penalty phase instructions were improper; (9) the jury instruction

regarding "reasonable doubt" was improper; (10) trial counsel was ineffective in failing to investigate allegations that petitioner assaulted his cellmate; (11) trial counsel was ineffective in failing to present evidence of petitioner's good conduct while in jail; (12) trial counsel was ineffective in failing to present evidence that petitioner suffered from head injuries and a seizure disorder; (13) trial counsel was ineffective for not presenting evidence from Dr. Bruce Harry; (14) trial counsel was ineffective for not objecting to petitioner being forcibly and improperly medicated in jail during trial; (15) trial counsel was ineffective in failing to present evidence of petitioner's alcohol use as mitigating evidence; (16) trial counsel was ineffective in failing to present evidence of petitioner's learning disabilities as mitigating evidence; (17) trial counsel was ineffective in failing to investigate alleged mental problems of the victim; (18A) trial counsel suppressed a white shirt from the crime scene which allegedly would have proven petitioner's actual innocence; (18B) trial counsel did not effectively impeach and discredit Lucius House; and (18C) his attorneys failed to give petitioner enough time to review their work and often did not listen to his directions in their representation of him.

Petitioner filed written objections to the Report and Recommendation, specifically objecting to Judge Blanton's findings and conclusions on each claim. Additionally, petitioner generally objects to the Report and Recommendation in its entirety in a document titled "Facts of Objections". Finally, petitioner argues

that, by failing to timely respond to petitioner's claims, respondent should be held in default with judgment granted in favor of petitioner.

## II.  Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus cannot be granted unless: (1) the state decision was either contrary to, or involved an unreasonable application of, clearly established federal law; or (2) the state decision was an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner's objections seem to focus on whether there was an unreasonable application of clearly established federal law.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000).  "Congress specifically used the word 'unreasonable', and not a term like 'erroneous' or 'incorrect'. Id. at 411.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id.  Instead, "that application must be unreasonable."  Id.

### Claim 1:  Voir Dire

Petitioner first claims that the trial court erred in sustaining the prosecution's challenge for cause to venireperson Ross Melick.  During voir dire, Mr. Melick indicated that he would have some difficulty voting in favor of a sentence of death.  Upon

subsequent questioning by petitioner's attorney, Mr. Melick stated that he would attempt to obey the court's instructions, but would find it difficult to do so under circumstances involving the death penalty.

Excluding a potential juror for cause does not require that the potential juror's bias be proven with "unmistakable clarity." Wainwright v. Witt, 469 U.S. 412, 424 (1985). Instead, "[a] trial court appropriately excludes a potential juror in a death penalty case when the juror's views 'prevent or substantially impair the performance of the juror's duties.'" Hall v. Luebbers, 341 F.3d 706, 714 (8th Cir. 2003)(internal citations omitted).

The Missouri Supreme Court found that the trial court could have reasonably found that Mr. Melick's views on the death penalty substantially impaired his ability to follow the law. This decision appropriately applies federal law and is supported by the record. Further, petitioner's death sentence was later vacated, so to the extent that petitioner believes Mr. Melick's presence on the jury would have resulted in a sentence of life imprisonment rather than death, such a claim is now moot. Petitioner's first claim is without merit and his objections are denied.

### Claim 2: Statements Made by Co-Defendant

Petitioner's second ground for relief alleges that the trial court erred in admitting testimony referring to statements made by petitioner's co-defendant, Henry Cook. Petitioner believes the statements made by co-defendant Cook supported the testimony of Lucius House, one of the prosecution's witnesses. Petitioner

argues that these statements led the jury to believe Mr. House's version of events instead of the story being offered by petitioner. Petitioner contends that the court should have granted a mistrial based on such testimony.

The Missouri Supreme Court rejected this argument on appeal, finding that the prosecution did not rely on any statements made by co-defendant Cook. Judge Blanton noted that, while references to Mr. Cook's statements were made in the record, the substance of such statements were not revealed.

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). Judge Blanton found that petitioner failed to show a reasonable probability that any references to Mr. Cook's statements affected the outcome of his trial. Petitioner objects to this finding, arguing that Judge Blanton overlooked facts and misapplied the law. However, petitioner does not specify which facts he believes Judge Blanton overlooked. After examining the issue, the Court agrees with Judge Blanton. Petitioner's objections on this claim are denied.

### Claim 3: Sufficiency of the Evidence

In his third claim, petitioner argues that the evidence presented against him was insufficient to satisfy the deliberation element of a first degree murder charge.

"[I]n reviewing the sufficiency of the evidence to support a guilty verdict, [the Court's] task is to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Bounds, 151 F.3d at 1118 (citing Jackson v. Virginia, 443 U.S. 307 (1979)).

Petitioner objects to Judge Blanton's finding that the evidence was sufficient for a rational jury to find that petitioner acted with deliberation. Under Missouri's first degree murder statute, 'deliberation' is defined as "cool reflection for any length of time no matter how brief." Section 565.002(3) RSMo (1998). The Court finds that the evidence presented was sufficient for a rational juror to find that petitioner acted with 'deliberation', as defined under Missouri law. First, Lucius House testified that he heard the victim yelling for help while arguing with petitioner inside victim's trailer. Petitioner was also observed dragging the victim out of the trailer by something wrapped around the victim's neck. Mr. House then testified that he heard the victim tell petitioner, "Just go ahead and kill me, James. Just kill me, James." Then, according to the Mr. House's testimony, petitioner picked up a brick and used it to hit the victim in the head four or five times. Petitioner subsequently hit the victim an additional three to four times in the head with the brick. The pathologist testified that the victim had nine incised wounds across his neck. The victim's cause of death was blunt

trauma to the head.  Like Judge Blanton, the Court views this evidence as sufficient for a rational jury to find that petitioner murdered the victim with deliberation.  Thus, petitioner's third claim is also denied.

### Claim 4: Petitioner's Statements to Law Enforcement

Petitioner's fourth claim alleges that statements he made to law enforcement were not voluntarily made and that his confession was coerced through the use of racial threats.

A hearing was held on petitioner's motion to suppress statements on October 13, 1995.  A police officer testified that as he responded to the scene of the trailer fire he observed Mr. White's body laying face down on a burnt-out portion of the building.  The building was almost entirely burnt down by this time.  The officer testified that petitioner walked up to him and told him that a violent explosion had occurred and that the stove had blown across the room.  The officer testified that he examined the burnt down trailer and noticed that the stove was still hooked up and had not been blown across the room.

Petitioner also made statements after his arrest at the police station.  A second police officer testified that petitioner was given his Miranda rights and that petitioner waived those rights prior to making any statements.  During questioning, petitioner yelled loudly that he had hit Mr. White with a brick.

Petitioner claims that he had been drinking and was under medication.  He also claims that police officers told him that, because he was a black man, he would face a "lynch mob" if he did

not confess.  The Missouri Supreme Court denied petitioner's claims, finding that the statements were voluntary and intelligent.

There is no evidence in the record to support petitioner's contention that he was coerced into confessing through racial threats.  Further, there is no indication that petitioner was suffering from the side effects of any medication at the time he made his statements.  While the record does support petitioner's claim that he had purchased alcohol that night for his group of friends, there is no evidence that petitioner himself drank alcohol such that it would impair his judgment when he made his statements to law enforcement.  As the Missouri Supreme Court noted, petitioner told a police officer that he was sober.  Instead, the record shows that petitioner made a decision to knowingly and voluntarily waive his Miranda rights.  Petitioner's fourth claim is denied.

### Claim 5: Prejudicial Photographs at Trial

In his fifth claim for relief, petitioner argues that he was prejudiced by the admission of gruesome crime scene and autopsy photographs into evidence at trial.

The Missouri Supreme Court found that the photographs were properly admitted, and relevant in, among other things, establishing the element of deliberation.  The Court noted that gruesome pictures often accompany gruesome crimes.

In order for petitioner to prevail on his argument that the photographs violated his due process rights, he must show "that the asserted error was so conspicuously prejudicial or of such

magnitude that it fatally infected the trial and deprived him of fundamental fairness." Manning-El v. Wyrick, 738 F.2d 321, 323 (8th Cir. 1984). The Missouri Supreme Court found that the photographs were probative in establishing whether the homicide was committed with deliberation, an element of the crime in which petitioner was charged. This decision is not contrary to clearly established federal law. The admission of the photographs, while prejudicial in the sense that they were detrimental to petitioner's case, were not unduly prejudicial in the sense that they deprived petitioner of fundamental fairness in his trial. Petitioner's fifth claim is denied.

### Claim 6: Improper Statements by Prosecutor

In his sixth claim, petitioner alleges that various statements made by the prosecutor were improper. Specifically, petitioner objects to the following statements during voir dire: (1) that the evidence would be gruesome; (2) that an aggravating circumstance made this case worse than others; (3) that the death penalty was like a "hallway with three doors"; and (4) shooting at a police officer constitutes an aggravating circumstance. Petitioner also objects to the following statements made by the prosecutor in the guilt stage of the trial: (1) petitioner was the sole beneficiary of the victim's will and had written a letter asking for control of the victim's bank account; (2) the victim could have possibly drowned in his own blood; (3) the jury could imagine how painful it would be to have their throats cut; (4) a characterization of the doctor's testimony that the victim's leg wounds were consistent

with someone being restrained; (5) the manner of death was "victimization"; and (6) the victim was not afforded either a jury or a judge.  Finally, petitioner makes multiple claims regarding statements made by the prosecutor in the penalty phase of the trial.  Because petitioner's sentence has been reduced to life imprisonment, his claims relating to the penalty phase will not be discussed and are denied as moot.

"In determining whether the prosecutor's [statements] violated the defendant's due process rights, the pertinent inquiry is 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000)(quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Therefore, petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial --i.e., that absent the alleged impropriety, the verdict probably would have been different." Kellogg v. Skon, 176 F.3d 447, 451 (8th Cir. 1999).  After reviewing the record, the Court does not believe there is any reasonable probability that any of the statements made by the prosecutor affected the outcome of petitioner's trial.  The Missouri Supreme Court's denial of this claim on appeal based on a plain error analysis was not contrary to clearly applicable federal law.  Petitioner's sixth claim is denied.

## Claim 7: Improperly Admitted Evidence

For his seventh claim, petitioner argues that certain guilt and penalty phase evidence was improper.  The Court will again focus only on allegations of error during the guilt phase.  First, petitioner objects to the police officer's testimony that the victim's neck wounds were "quite significant".  Second, petitioner objects to the testimony of the fire investigator, Mike Johnson, that it was first reported that a bomb had exploded at the trailer.  Petitioner next objects to the comparison made by Dr. Zarracore that the victim's injuries resembled those of a sexual assault victim.

The Missouri Supreme Court rejected this claim on appeal. In regard to the police officer's testimony, the Court held that the statement that the wounds were "quite significant" was not prejudicial because similar evidence was elicited from the testimony of the pathologist, Dr. Zarracore.  Second, the Court found that Mr. Johnson's statement was not inadmissible hearsay because he was explaining conduct he observed as he arrived at the scene of the fire.  Finally, the Court found that Dr. Zarracore did not imply that petitioner sexually assaulted victim, but was comparing the victim's wounds with the defensive wounds of a sexual assault victim.

These findings by the Missouri Supreme Court are not contrary to clearly applicable federal law.  There has been no showing that any of these pieces of evidence were so prejudicial as to fatally infect petitioner's trial.  Petitioner's seventh claim is denied.

## Claim 8:  Penalty Phase Instructions

Petitioner's eighth claim relates to the instructions given to the jury during the penalty phase of petitioner's trial.  This claim is denied as moot.

## Claim 9: "Reasonable Doubt" Instructions

In his next claim, petitioner argues that the instruction given to the jury regarding "reasonable doubt" was improper and violated his due process rights because it essentially allowed the jury to convict him upon a lesser standard of proof.

The "reasonable doubt" instructions at issue here were each patterned after Missouri's model jury instructions.  See MAI-CR3d 302.04; MAI-CR3d 313.30A.  The Missouri Supreme Court has upheld the validity of these model instructions.  Further, as noted by Judge Blanton, the Court of Appeals for the Eighth Circuit has found Missouri's reasonable doubt instruction to be constitutionally sound.  Petitioner's ninth claim for relief is denied.

## Claims 10-18: Ineffective Assistance of Counsel

Claims 10-18 of the petition for habeas relief are each based on an ineffective assistance of counsel claim.  To prevail on an ineffective assistance of counsel claim, petitioner must show both error and prejudice.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  To establish error, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. In other words, "counsel's representation [must fall] below an

objective standard of reasonableness." Id. at 688. Because it is very easy to judge trial decisions differently in hindsight, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Indeed, petitioner has the burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citations omitted). Even if petitioner is successful in establishing counsel error, he must also show "that because of counsel's error, there is a reasonable probability that the result of the proceedings would have been different." Id. at 690.

Petitioner's tenth claim alleges that trial counsel was ineffective by not fully investigating allegations that petitioner has assaulted his cell-mate while confined in the county jail. Petitioner's eleventh claim alleges that trial counsel was ineffective by failing to present evidence of petitioner's good conduct while in jail. As noted by Judge Blanton, both of these claims relate to the penalty phase of petitioner's trial. Because petitioner's sentence of death was vacated, these claims are now moot and will be denied.

In his twelfth claim, petitioner argues that trial counsel was ineffective for failing to present the testimony and records of Dr. J. David Auner and counselor Douglas Pope concerning petitioner's seizure disorder. Petitioner's trial counsel testified at the hearing held on petitioner's post-conviction relief motion, where he raised this claim. Counsel testified that he did not admit the

medical reports of Dr. Auner or Mr. Pope because he believed the information in the reports was contained in the testimony of two of his expert witnesses, Dr. Leonberger and Dr. Armour. The motion court rejected petitioner's claim.

The Court finds no error in trial counsel's decision to not offer the specified medical records into evidence. Dr. Leonberger testified that, had petitioner been experiencing a seizure on the night of the murder, he would have been physically unable to complete the homicide. Thus, the medical reports would not have established that petitioner lacked the deliberation element when he committed the murder. This evidence simply would not have supported petitioner's defense and it was not erroneous for trial counsel to withhold it from the record.

For his thirteenth claim, petitioner argues that trial counsel was ineffective for failing to present the testimony of Dr. Bruce Harry to testify regarding petitioner's head injuries, seizure disorder, cognitive disorder, and alcohol problems. In his objections, petitioner explains that a medical doctor is perceived differently by the jury than a psychiatrist,[2] and therefore he was prejudiced by his attorney's decision to present the testimony of two psychologists instead of a psychiatrist.

The motions court denied this claim, finding it "particularly preposterous" in light of petitioner's previous claim that counsel

---

[2]A psychiatrist has a medical license. The Court assumes that petitioner means that a medical doctor may be perceived differently than a *psychologist*.

was ineffective for not presenting records from Douglas Pope, who does not have a medical license. The Court agrees that petitioner has failed to establish ineffective assistance of counsel. It is not convinced that it was erroneous trial strategy to elicit testimony from two psychologists rather than a psychiatrist. There is no evidence that the psychologists who did testify were incompetent or not respected by the jury simply because they were not psychiatrists. Petitioner's thirteenth claim is denied.

Petitioner's fourteenth claim asserts that trial counsel was ineffective for failing to object to the forced over-medication of petitioner while he was in the county jail before and during trial. Trial counsel testified that he had no reason to believe that petitioner was being over-medicated: petitioner did not complain about being over-medicated; petitioner was able to converse with counsel about the case; petitioner was responsive to counsel's questions; and petitioner appeared attentive throughout the trial. The motion court found that petitioner had presented no evidence that would have put either the court or trial counsel on notice that petitioner was being over-medicated or to doubt petitioner's competency to stand trial.

In his objections, petitioner alleges that "state officials knew or should have known the effects of this medication on petitioner before and during trial." Petitioner alleges that the trial court had records in its possession which showed petitioner's lab results and blood chemical make-up and had been notified by jailers of petitioner's use of medicine.

-17-

The decision of the motion court was not contrary to clearly applicable federal law. Trial counsel's testimony that petitioner did not exhibit any signs of over-medication and that he appeared alert and attentive throughout the trial supports the motion court's finding that counsel did not err in failing to bring the issue to the attention of the courts. Petitioner's fourteenth claim, alleging ineffective assistance of counsel, is denied.

In his next claim, petitioner argues that trial counsel was ineffective for failing to present evidence of petitioner's alcohol use during the trial. The motion court denied this claim, finding that the record refutes petitioner's claim that he was intoxicated. The court also noted that the jury would not be able to consider voluntary intoxication on the issue of defendant's mental state.

Petitioner argues in his objections that alcohol further contributed to his mental state under the totality of the circumstances, taking into account not only his alcohol use but also his seizure disorder and medication use. The Court finds that petitioner has failed to establish ineffective assistance of counsel on this claim. As Judge Blanton indicated, petitioner's own testimony at trial was that he had not consumed alcohol at the time of the murder. Any evidence presented by counsel that petitioner had been drinking would have simply undercut petitioner's credibility. Petitioner's fifteenth claim is denied.

In his sixteenth ground for relief, petitioner argues that trial counsel was ineffective for failing to call an expert to present evidence of petitioner's learning disabilities as

mitigating evidence.  Petitioner appears to be arguing that this evidence should have been presented at the penalty phase.  Like the other arguments directed towards the penalty phase, this one is denied as moot.  To the extent that petitioner argues that the mitigating evidence should have been presented at the guilt phase of the trial, the Court agrees with Judge Blanton that such an argument is procedurally barred.

Petitioner's seventeenth claim alleges that trial counsel was ineffective for failing to present evidence that the victim exhibited "bizarre behavior".  The motion court denied this claim, noting that evidence of the victim's character is inadmissible.

Counsel cannot be ineffective for failing to offer inadmissible evidence.  Further, petitioner has not shown how such evidence, even if admissible, would have advanced his defense.  In his objections, petitioner states that such "bizarre behavior" includes the victim's alleged passion for burning items and starting fired.  Even if evidence of such pyromania actually existed, it would not explain to the jury how the victim suffered multiple cuts on his throat or why petitioner was observed beating the victim multiple times on the head with a brick, which was ultimately identified as the cause of death.  Petitioner's seventeenth claim is denied.

In his final ground for relief, petitioner argues that: (A) the white shirt used by petitioner to drag the victim from the trailer was not offered into evidence; (B) trial counsel failed to impeach the testimony of prosecution witness Lucius House; and (C)

counsel failed to give petitioner adequate time to review their work. Judge Blanton found that petitioner has procedurally defaulted on the first and second of these claims. Petitioner objects to Judge Blanton's finding of procedural default, but still has not shown cause to excuse his procedural default.

The Court agrees that petitioner has procedurally defaulted on claims 18A and 18B. Petitioner did not raise either of these claims in his appeal from the denial of post-conviction relief. Further, even if these claims were not procedurally defaulted, the Court finds that they are without merit.

First, petitioner has not shown that he was prejudiced in any way by the failure to admit into evidence the white shirt used to drag the victim from the trailer. In his objections, petitioner argues that the "bloodless white shirt" would discredit the prosecution's witness Lucius House and would prove petitioner's actual innocence. This argument is without merit. Even if the white shirt was indeed bloodless, it would not discredit Mr. House's testimony that he observed petitioner beat the victim in the head with a brick. Mr. House did not testify that the shirt had been on the victim during the beating, when it could have absorbed blood. Indeed, Mr. House did not even identify the white shirt in his testimony as the item used to drag the victim from the trailer. Instead, Mr. House testified that petitioner "had something tied around [the victim's] next, and he was dragging [the victim] on the ground by this thing he had around [the victim's] neck. The admission of the shirt would not have contradicted Mr.

House's testimony. Further, it does nothing to demonstrate petitioner's actual innocence.

Likewise, petitioner's claim that trial counsel was ineffective for failing to discredit the testimony of Mr. House is also without merit. Petitioner claims that counsel should have impeached Mr. House's testimony with the following inconsistent statements: (1) at trial, Mr. House testified that petitioner threw the victim over the hood of the car, while at the preliminary hearing he instead testified that the body was never on the car; and (2) at trial, Mr. House testified that petitioner had turned off the headlights when he visited the victim's trailer, while at the preliminary hearing he testified that petitioner left the headlights on.

Petitioner did raise this claim in his post-conviction relief motion, although he did not raise it in the appeal of the denial of that motion. The motion court rejected petitioner's claim of ineffective assistance of counsel, finding that petitioner failed to establish how he was prejudiced by his attorney's failure to impeach Mr. House on those statements. Judge Blanton found that this decision was not contrary to clearly applicable federal law, and this Court agrees. The motion court properly applied Strickland and determined that petitioner failed to meet its burden.

In his final argument under claim eighteen, petitioner alleges that appellate counsel, post-conviction relief counsel, and post-conviction relief appellate counsel all failed to give petitioner

sufficient time to review their work. Petitioner also argues that counsel did not follow his direction on which claims to present.

As Judge Blanton noted, claims that post-conviction relief counsel or post-conviction appellate counsel were ineffective are not cognizable under 28 U.S.C § 2254. <u>See</u> 28 U.S.C. §2254(I) ("ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Petitioner's claims as to post-conviction counsel are denied.

In regard to the ineffectiveness of petitioner's direct appellate counsel, Judge Blanton found that this too had been procedurally defaulted. The Court agrees, and finds that it fails on the merits as well. Petitioner has simply failed to establish prejudice under <u>Strickland</u> for each of his ineffective assistance of counsel claims.

### Petitioner's Miscellaneous Objections

In addition to his specific objections to each claim, petitioner makes several conclusory objections, including: (1) that the state, by failing to timely respond to petitioner's claims, has defaulted; (2) the Report and Recommendation should have appointed petitioner legal counsel; (3) petitioner was denied his right for an evidentiary hearing; and (4) the Report and Recommendation should have granted petitioner a certificate of appealability. Each of these objections are made without legal support, and are overruled.

### III. <u>Conclusion</u>

Petitioner has not shown that the prior adjudication of his claims in state court was contrary to, or involved an unreasonable application of clearly established federal law.  Nor has petitioner shown that the state adjudication was based on an unreasonable determination of the facts in light of the evidence presented. Federal habeas relief is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Lewis M. Blanton [#46] is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the amended petition of Rufus J. Ervin, Sr., for a writ of habeas corpus [#16] is **denied.**

**IT IS FURTHER ORDERED** that petitioner has failed to make a substantial showing of the denial of a constitutional right and the Court will not issue a certificate of appealability.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2007.